PER CURIAM.
 

 The relator, who is an attorney at law, is applying for writs of certiorari and mandamus to compel the judges of the civil district court to permit him to practice before the court without paying the $5 annual dues assessed by the Louisiana State-Bar Association. Two of the judges before whom he appeared as an attorney in certain judicial proceedings in the civil district court informed him in open court that his name was on the delinquent list furnished to the court by the Bar Association, and that he would not be permitted to practice before the court unless he would first reinstate himself in good standing by paying the $5 annual dues and the penalty of $5 imposed for delinquency.
 

 Relator contends that his being forbidden to practice law, in the way in which he is forbidden by the two judges, without any judicial proceedings against him, deprives him of a valuable property right without due process of law, and that the two judges have virtually disbarred him, in violation of the provision in section 10 of article
 
 7
 
 of the Constitution, vesting in the supreme court exclusive original jurisdiction in disbarment cases.
 

 The relator admits in his petition that on February 27, 1942, he received a registered letter from the secretary-treasurer of the Bar Association advising him that the annual dues for membership in the association, which had been fixed at $5, for the year 1942-1943, would be payable in advance on April 1, 1942.
 

 He admits that, on May 3, 1942, he gave written notice to the secretary-treasurer of the Bar Association that he would not pay the dues assessed by the Association and had no desire or intention to be a member of the Association. In this letter of May 3, he sent to the secretary-treasurer of
 
 *46
 
 the Bar Association a carbon copy of a letter which he had sent to the United States Internal Revenue Department, and in which, among other declarations, he declared to the collector of internal revenue:
 

 “Dear Sirs:
 

 “Inclosed please find money order for $5, the occasion for this remittance being for the following reasons, to-wit:
 

 “The Legislature of the State of Louisiana in 1940 passed Act No. 54, known as Senate Bill No. 68, and Section 2 of said Act reading as follows:
 

 “ ‘Section 2. That the membership of the Association shall consist of all persons now or hereafter regularly licensed to practice law in this State, and no person shall practice law in this state who is not a member thereof in good standing.’
 

 “Thereafter, the Louisiana State Bar Association was incorporated by a notarial act and thereafter the Association fixed the yearly dues of its members at $5 each for active members and $3 yearly for inactive members, etc.
 

 “I concede it is the right of the Legislature to pass a law taxing any and all persons within the State, lawyers, doctors; dentists, etc., but I do not believe it is the right of the Legislature, the Supreme Court of Louisiana, or of any other governing body, to compel by a legislative act or otherwise any particular class of persons' to automatically become members of any particular organization and to pay dues to that association or organization in any amount, and penalize them by suspension from the practice of their profession in the ' event that. such compelled member may neglect, fail or refuse to pay such dues.
 

 “Therefore, believing that at this critical time in the history of my country, that my country needs this small contribution more than does the Louisiana State Bar Association, of which I do not care to be a member, and denying its right to suspend my right to earn a living by the practice of law, simply because I refuse to pay such dues, I am paying the $5 to my Government rather than to the said Bar Association, be the results come what may.”
 

 Relator admits in his petition that, on May 20, 1942, he received a registered letter from the secretary-treasurer of the Bar Association reminding him of the letter of February 27, and again advising him that the annual dues for the year 1942-1943, which had been fixed at $5, were payable on April 1, 1942, and had not been ■paid. And he admits that in the letter of May 20, 1942, the secretary-treasurer of the Bar Association quoted Section 4 of Article V of the Articles of Incorporation of the Association, which had been adopted formally as one of the rules of the Supreme Court, and which section reads as follows:
 

 “Sec. 4. A member in default in payment of dues for thirty days shall be regarded as delinquent, and shall be given written notice thereof by the Secretary-Treasurer. If the delinquent member fails to pay such dues within thirty days after such notice of delinquency, he shall cease to be a member in good standing, and the Secretary-Treasurer shall certify to the Supreme Court that the delinquent is thus ineligible to practice law.
 

 
 *48
 
 “Where a member has thus become ineligible, he shall' be reinstated upon payment of the dues owed at the time he ceased to be a member in good standing, together with a penalty of Five Dollars ($5) and any additional dues that might be payable for the current year. Notice of the removal of his ineligibility shall be given to the Supreme Court.”
 

 He admits that in this letter from the secretary-treasurer he was reminded that his dues, amounting to $5, had not been paid and that he was therefore delinquent.
 

 The secretary-treasurer of the Association, following out the rules, filed in the office of the clerk of the Supreme Court a list of the delinquents, including relator, and furnished an attested copy of the list to every court of record in the State, with a reminder that, under the provisions of Section 2 of Act 54 of 1940, a lawyer is not allowed to practice law in Louisiana if he is not in good standing as a member of the Louisiana State Bar Association.
 

 The integration of the state bar, and the authority of the Bar Association to levy and collect annual dues for the privilege of practicing law, exists by virtue of an exercise of the inherent power of the Supreme Court to regulate and control membership in the bar of the state; and it had its origin in an act of-the Legislature, Act 54 of 1940.
 

 In the first section of Act 54 of 1940 the Supreme Court was memorialized to create an Association to be composed of all of the lawyers in the state, and to be known as the Louisiana State Bar Association. In the second and third section of the act it is declared:
 

 “Section 2. That the membership of the Association shall consist of all persons now or hereafter regularly licensed to practice law in this State, and no person shall practice law in this State who is not a member thereof in good standing.
 

 “Section 3. That the Supreme Court is hereby memorialized to exercise its inherent powers by providing for the organization and regulation of the Louisiana State Bar Association; by providing rules and regulations concerning admissions to the-Bar, the conduct,and activities of the Association and its members;
 
 and by providing a schedule of membership dues, the non-payment of which shall be ground for’ suspension;
 
 and by providing for the discipline, suspension or disbarment of its members.” [Italics by the court].
 

 Accordingly, the proposed articles of incorporation of the Louisiana State Bar Association were prepared by a committee of’ lawyers elected by the lawyers themselves, under an order of this court providing for the election. And when the drafting of the proposed articles of incorporation was completed, on March 12, 1941, the court rendered its order completing the organization, as follows:
 

 “The Louisiana State Bar Association is-hereby organized under the rule-making' power of the Court. The rules and regulations which shall govern it as
 
 cm agency of the Court
 
 are the articles set forth in Exhibit A, which is the proposed form of’ articles of incorporation, and a copy of which is annexed to this order and made a.
 
 *50
 
 part hereof as fully as though copied in extenso herein”. [Italics by the'court].
 

 Among the articles of incorporation which were adopted as rules of the court was Section 4 of Rule V, which we have quoted, and Section 4 of Rule IV, — thus: “Article IV, Section 4. No person shall practice law in this state who is not an active member, in good standing, of this Association.”
 

 The inherent power of a state Supreme Court to prescribe rules and regulations to govern the right to practice law in the state is now so well settled that there is no necessity for citing decisions on the subject. And the authority of the Legislature, in the exercise of its police power and in the performance of its duty to protect the public against imposition and incompetence on the part of persons professing to be qualified to practice law, to prescribe additional qualifications and conditions for the right to practice law, is equally well settled. The leading case on the subject in Louisiana is Ex parte Steckler, 179 La. 410, 154 So. 41, where the jurisprudence elsewhere up to that time was reviewed thoroughly.
 

 The levying of dues by the Bar Association in a state which has adopted the so-called integrated bar is merely a form of levying a license tax upon the right to practice law. In this case the tax is levied by express authority of the act of the Legislature, Act 54 of 1940, memorializing the Supreme Court to organize the integrated bar, under the name of the Louisiana State Bar Association. To say that such license taxes, or occupation taxes, in the form of annual dues levied by the Association, cannot be enforced because they deprive the attorneys of their freedom either to join or not to join the Association, is the same as to deny the authority of the state to organize the members of the bar into an integrated bar, under the state’s police power and under the inherent power of the Supreme Court to regulate the practice of law. On this subject see the lineup of decisions in the annotation of the case entitled In re Integration of Nebraska State Bar Association, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151, loc. cit. 165.
 

 In State v. King, 21 La.Ann. 201, the tax collector sued King, an attorney at law, for an annual license tax or occupation tax of $50, levied by the state under an act of the Legislature of April 4, 1865, for the right to practice law. Among other defenses King pleaded that he was licensed by the Supreme Court to practice law and that the Legislature had no authority to impose any additional restriction, such as a license tax, or occupation tax, upon his right to practice law. Affirming the judgment in favor of the tax collector, this court declared:
 

 “The third ground of exception, that the defendant should not pay a tax or license for pursuing the occupation of attorney at law because he is licensed by the courts of the State to practice, and because it divests his vested rights, etc., is also invalid.
 

 “This point has been frequently, determined by this court adversely to the defendant, and is no longer an open question. In the case of State v. Rufus Waples, 12 La.Ann. 343 this court said:
 

 
 *52
 
 “ ‘The argument that the permission or license to practice law is a contract between the State and the attorney at law which shields him from taxation, and which cannot be regulated in any manner during his lifetime by the Legislature, merits no serious reply’
 

 The Louisiana 'State Bar Association, in its opposition to the petition of the relator, has furnished a list showing that the other states that have an integrated bar are not more lenient than this state is in the matter of compelling the payment of annual dues to the Bar Association.
 

 In Alabama, for example, section.il of the Alabama State Bar Act (Act 551, p. 872 General Acts of Alabama 1939), as amended, provides that every member of the State Bar shall, prior to the first day of October in each year, pay a fee of $25, and that “no attorneys who are in default in the payment of such fee shall be recognized in the Courts of Alabama or in the voting or transaction of business by the State Bar as being in good standing until they have paid the required license fee.”
 

 In Arizona, chap. 66 of the act incorporating the State Bar, 1933 Sessions Laws of Arizona, provides:
 

 “Sec. 27. * * * With the approval of the supreme court the board shall have power to fix and collect fees to be paid by applicants for admission to practice, which fees shall be paid into the treasury of the state bar; * *
 

 “Sec. 49. No person shall practice law in this state subsequent to the organization meeting of the state bar unless he shall be an active member thereof in good standing as in this act defined.”
 

 “Sec. 51. Any person who, not being an active member of the state bar, or who-after he has been disbarred, or while suspended from membership in the state bar, shall practice law, shall be guilty of a misdemeanor.”
 

 In California, the State Bar Act, Stats. 1939, ch. 34, p. 347, provides:
 

 “6002. The members of the State Bar are all persons admitted and licensed to-practice law in this State * * * ”,
 

 “6125. No person shall practice law in-this State unless he is an active member of the State Bar."
 

 “6143. Any member, active or inactive, failing to pay any fees after they become due, and after two months written notice-of his delinquency, shall be suspended from membership in the State Bar.”
 

 In Idaho, in the Code Annotated, 1932, and the 1940 Supplement, which provide-for the organization of the State Bar Association, it is declared:
 

 “3-401. Recognizing that the practice of the legal profession is a privilege granted by the state and not a natural right of the individual, it is deemed necessary as a matter of business policy and in the interests of the public to provide laws, and provisions covering the granting of that privilege and its subsequent use, control and regulation to the end that the public shall be properly protected against unprofessional, improper and unauthorized practice of law and unprofessional conduct of members, of the bar.”
 

 
 *54
 
 “3-409. Every person practicing, or Folding himself out as practicing, law within this state, * * * shall * * * pay .into the state treasury as a license fee -* * *. The state auditor is hereby authorized, upon presentation of the proper vouchers * * * approved by the board ■of commissioners of the Idaho state bar * * * to draw his warrant upon said fund”.
 

 “3-420. If any person shall, without having become duly, admitted and licensed to practice law within this state or whose right or license to practice therein shall have terminated either by disbarment, suspension, failure to pay his license or otherwise, practice or assume to act * * * as a person qualified to practice or carry on the calling of a lawyer within this state, he shall be guilty of an offense under this act * * * ”,
 

 In Kentucky, under authority of Session Laws 1934, Chapter 3, the Court of Appeals adopted rules for the organization and government of a State Bar Association; and in these rules it is provided:
 

 “Rule 8. All members.of the State Bar, ■except honorary and retired, shall, on or before September, 1934, and annually thereafter, pay to the Treasurer of the State Bar, as a license fee for the ensuing fiscal year, the sum of three dollars. * * * If any attorney shall be in default in the •payment of dues to the State Bar Association the Registrar of the Board shall send him written notice of such fact, and if he remain in default after the first day of November of any year, the Registrar shall on that day certify to the Court of Appeals the name of such Attorney, and a rule returnable twenty days thereafter shall thereupon issue against him to .show cause why he should not be suspended from the practice of law * * *
 

 In Mississippi, section 14 of the Unified Bar Act (Chapter 121 of Laws of 1932) providing for the organization, regulation and government of the Mississippi State Bar, declares:
 

 “Each member of the association engaged in the practice, or in order to possess authority to practice law in this state, shall pay dues each year in the sum of $5.00. 4c 4c 4C»
 

 “Sec. 25. Any member failing to pay any dues after the same become due, and after two months’ written notice of his delinquency mailed to him by registered mail, addressed to his usual place of abode, shall thereby stand suspended from membership in the Mississippi State Bar. * * * ”
 

 In Nebraska, under the Revised Rules of the Supreme Court, creating, controlling and regulating the Nebraska State Bar Association, in Article IV it is provided:
 

 “Sec. 1. The annual dues for active members shall be Five Dollars ($5) per year, payable on .or before January 1st of each year.”
 

 “Sec. 3. When any member is in arrears more than two (2) months, -the Secretary shall send written notice by registered mail to such member, addressed to his last recorded business address. Any member who shall fail to pay such arrearages with
 
 *56
 
 in thirty (30) days after the receipt of such notice shall cease to he a member of this Association, and shall not practice law until the arrearages be fully paid.”
 

 In New Mexico, the State Bar Association is governed by a Board of Commissioners. Sec. 9-210, 1929 Comp.St. And under its rules it is provided:
 

 “ * * * each member of the State Bar shall pay as an annual license fee the sum of $5.”
 

 In Rule III of the New Mexico Supreme Court Rules it is provided: “Sec. 4. Whenever the Board of Commissioners of the State Bar shall cause to be certified, under its seal, to this court that any member or members of the State Bar has or have failed or refused to pay the license fee imposed by Section 10, Chapter 100, Laws 1925, as amended by Section 2, Chapter 113, Laws 1927, the clerk of this court shall issue citation to each such delinquent member requiring him to show cause before this court, within twenty days after service of such citation, why he should not be suspended from the right to practice in the courts of this state.”
 

 In Texas, Article IV of the rules governing the State Bar, which were approved by the Supreme Court of Texas on February 22, 1940, provides: “Sec. 4. The annual membership fee prescribed by the Supreme Court shall be due and payable by each member to the Clerk of the Supreme Court June 1 of each fiscal year. * * * ”
 

 “Sec. 5. A member in default of payment of the fee for sixty days after it is due, shall be regarded as delinquent and shall be given written notice thereof by the clerk of the Supreme Court. If the delinquent .member fails to pay such fee within thirty days thereafter, he shall cease to be a member, but shall be reinstated upon p'ayment of the fees due at the time he ceased to be a member, together with fees for the current year. If at the end of ninety days after June 1, a member has not paid to the Clerk membership dues for the current year, the Clerk shall strike from the rolls of the State Bar the name of the delinquent member.”
 

 In Utah, the State Bar Act, adopted in 1931, and now part of Title 6, Revised Statutes of Utah 1933, provides.:
 

 “6-0-20. Every ■ person practicing, or holding himself out as practicing, law within this state, or holding himself out to the public as a person qualified to practice or carry on the calling of a lawyer within this state, * * * shall prior to so doing and prior to the first day of July of each year pay into the state treasury a license fee of $5; * * * ”.
 

 “6-0-24. Any person not duly admitted and licensed to practice law within this state, or whose right or license to practice therein shall have terminated either by disbarment, suspension, failure to pay his license fee or otherwise, who practices or assumes to act or hold himself out to the public as a person qualified to practice or carry on the calling of a lawyer within this state, is guilty of an offense, and shall be fined not to exceed $500, or be imprisoned for a period of not to exceed six months, or both, and, if he shall have been admitted to practice law, he shall in addi
 
 *58
 
 tion be subject to suspension under the proceedings provided by this title.”
 

 In the State of Washington, the State Bar Act, which was adopted by the Board of Governors of the State Bar Association and approved by the Supreme Court pursuant to Chapter 94, Laws of 1933, provides :
 

 “Sec. 9. The annual membership fee for active members shall be the sum of five dollars ($5.00) payable on or before February first of each year * * * ”.
 

 “Sec. 12. Any member failing to pay any fees after the same become due, and after two months’ written notice of his delinquency, must be suspended from membership in the state bar, but may be reinstated upon payment of accrued fees and such penalties as may be-imposed by the board of governors, not exceeding double the amount of the delinquent fee.”
 

 The contention of the relator that the Bar Association ought to proceed by way of an ordinary suit, for an injunction, against the delinquent members of the Association, to prevent their practicing law without paying dues, is not well founded. Attorneys at law are officers of the courts before which they practice, and the courts have the same authority to prevent their violating the rules that the courts have to prevent any other officer of the court from violating its rules. The members of the bar, unlike'the members of other professions, are under the direct control of the courts in the practice of their profession; hence it should not require much formality to constitute due process of law in the matter of compelling an attorney at law to obey the rules of court.
 

 There is no merit in the relator’s complaint that the judges of the civil district court are usurping the jurisdiction which is conferred exclusively upon the supreme court in disbarment cases, by suspending him as an attorney at law for failure to pay the dues assessed by the Bar Association. In the first place this is not a disbarment proceeding. It is a proceeding merely to compel him to pay the dues assessed against him by the Bar Association under authority of an act of the Legislature and an order of this court. The judges of the civil district court are merely carrying out a rule of this court, adopted in obedience to the mandate of the Legislature, expressed in sections 2 and 3 of Act 54 of 1940.
 

 It is not denied that the annual dues levied by the Louisiana State Bar Association are not more than sufficient to enable the Association to discharge its duties to the profession “as an agency of the court”. It would be unjust for the Association to collect 'dues from the members who are willing to pay without compelling the unwilling members to pay their dues.
 

 The petition for remedial writs is denied at the cost of the relator.