378 So.2d 423 (1979)
SINGER HUTNER LEVINE SEEMAN & STUART, Henry A. Singer, Joseph L. Hutner, Morton Levine, Jay W. Seeman, Walter B. Stuart IV and Stephen I. Dwyer
v.
LOUISIANA STATE BAR ASSOCIATION.
No. 65471.
Supreme Court of Louisiana.
December 13, 1979.
*424 Walter B. Stuart, IV, New Orleans, for plaintiffs-applicants.
Wood Brown, III, New Orleans, for defendant-respondent.
John C. Camp, Edwin K. Hunter, A. J. Gray, III, Donald A. Hoffman, David L. Sigler, Camp, Carmouche, Palmer, Barsh & Hunter, Lake Charles, amici curiae.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, Asst. Atty. Gen., amicus curiae.
DIXON, Justice.[*]
Singer Hutner Levine Seeman & Stuart is a partnership organized under the laws of the State of New York for the practice of law. Walter B. Stuart IV and Stephen I. Dwyer are attorneys admitted to practice law in the State of Louisiana by this court. Stuart is a partner and Dwyer is an associate in the New York firm. Stuart and Dwyer are the only persons associated with the firm who are admitted to practice in this state. They are also the only members of the firm who are physically in this state and actually practicing here. The other members of the firm are licensed and are practicing either in New York or California where the firm maintains an office.
On November 6, 1978 Stuart and Dwyer, through counsel, requested an opinion from the Louisiana Bar Association's Committee on Professional Responsibility on the question of whether their participation in the New York firm was an impediment to their continued practice in Louisiana. Before the committee formulated an opinion on the matter, Stuart and Dwyer were informed that they were under investigation by the committee. The members of the firm in New York were informed that they were under investigation by the Committee on the Unauthorized Practice of Law. The investigation followed an exchange of correspondence between Stuart and the executive counsel of the Committee on Professional Responsibility, who indicated that the committee was of the opinion that the practice by the Louisiana lawyers "under the heading" of the out-of-state firm was in violation of R.S. 37:213. The executive counsel later stated that he had only expressed his own initial observation as counsel for the committee, but nevertheless indicated that the matter was still under investigation by the bar association. The plaintiffs filed suit in this court under its original *425 jurisdiction over disciplinary proceedings against a member of the bar, seeking injunctive and declaratory relief preventing the bar association from interfering with its activities. The question presented to this court is whether the bar association should be restrained from taking any action against the plaintiffs because of their activities, which the bar association believes violate or aid in violation of R.S. 37:213.
R.S. 37:213 is derived from Act 163 of 1940, which purported to define and regulate the practice of law.[1] The statute now provides in pertinent part:
"No natural person, who has not first been duly and regularly licensed and admitted to practice law by the Supreme Court of this state, no partnership except one formed for the practice of law and composed of such duly licensed natural persons, and no corporation or voluntary association except a professional law corporation organized pursuant to Chapter 11 of Title 12 of the Revised Statutes, shall:
(1) Practice law;
(2) Furnish attorneys or counsel or an attorney and counsel to render legal services;
(3) Hold himself or itself out to the public as being entitled to practice law;
(4) Render or furnish legal services or advice;
(5) Assume to be an attorney at law or counselor at law;
(6) Assume, use or advertise the title of lawyer, attorney, counselor, advocate or equivalent terms in any language, or any phrase containing any of these titles, in such manner as to convey the impression that he is a practitioner of law; or
(7) In any manner advertise that he, either alone or together with any other person, has, owns, conducts or maintains an office of any kind for the practice of law."
The bar association contends that the activities of the out-of-state firm and its members are in violation of the statute, and that Stuart and Dwyer are subject to discipline under the Code of Professional Responsibility for aiding in the unauthorized practice of law.[2] The plaintiffs urge a more restrictive interpretation which would allow them to maintain a partnership composed of both in-state and out-of-state lawyers and to continue to use their current letterhead.
A determination of whether there is a statutory violation, however, is not dispositive of this case.[3] We must also determine whether the legislative attempt embodied in the statute to regulate the practice of law can in this instance be given effect.
It is well established that the final authority to regulate the practice of law is vested in this court, not in the legislature.[4]Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1979); Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976); Louisiana State Bar Association v. Connolly, 201 La. 342, 9 So.2d 582 (1942); *426 Ex parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, 170 So. 567 (Orl.La.App.1936). The power to regulate the practice of law arises from the division of our state government by our Constitution into three separate branches: the legislative, the executive and the judicial. La. Const., art. II, § 1. The Constitution provides that no one branch of government shall exercise the powers belonging to the others. La.Const., art. II, § 2. This division creates in the judicial branch an inherent power which the executive and legislative branches cannot abridge. Saucier v. Hayes, supra (Dennis, J., dissenting from the opinion on original hearing); Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765 (1977). The Constitution further provides that this court shall have exclusive original jurisdiction over disciplinary proceedings against a member of the bar. La.Const., art. 5, § 5(B). That provision is not a restriction on this court's inherent power but rather confers upon this court plenary power in the area of disciplinary proceedings. See Louisiana State Bar Association v. Connolly, supra. This court's inherent authority over the practice of law has been protected by the constitutional separation of powers in every constitution that this state has had, except that of 1868.[5] This court has had original jurisdiction over disbarment cases since the Constitution of 1898. La.Const., art. 85 (1898).
This court's authority to regulate the practice of law has resulted in the promulgation and adoption as rules of this court the Articles of Incorporation of the Louisiana State Bar Association.[6] See Supreme Court of Louisiana Order Book March 12, 1941-February 26, 1948 at p. 1A; Rules of the Supreme Court of Louisiana, Rule 19 (1973); R.S. 37:211; Saucier v. Hayes, supra; In re Mundy, 202 La. 41, 11 So.2d 398, 400 (1942); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719, 722 (1975). Compulsory membership in an integrated bar in Louisiana is the result of the exercise of this court of its authority to regulate the bar.
The articles incorporation were subsequently amended by this court to incorporate the Code of Professional Responsibility in lieu of the Canons of Ethics. See Supreme Court of Louisiana Order Book August 19, 1967-January 1971 at p. 162. The Code of Professional Responsibility, which regulates attorneys' practice, has been recognized as having the force and effect of substantive law. Saucier v. Hayes, supra; Louisiana State Bar Association v. Connolly, supra; Ex parte Steckler, supra. This court will uphold legislative acts passed in aid of its inherent power, but will strike down statutes which tend to impede or frustrate its authority. Saucier v. Hayes, supra; Louisiana State Bar Association v. Connolly, supra; Meunier v. Bernich,[7] supra.
Disciplinary Rule 2-102(D) of the Code of Professional Responsibility provides:
"A partnership shall not be formed or continued between or among lawyers licensed in different jurisdictions unless all enumerations of the members and associates of the firm on its letterhead and in other permissible listings make clear the jurisdictional limitations on those members and associates of the firm not licensed to practice in all listed jurisdictions; however, the same firm name may be used in each jurisdiction."
That provision, adopted by this court in the exercise of its inherent authority,[8] allows *427 partnerships to be formed by lawyers licensed in different jurisdictions as long as the firm's letterhead and other listings set out the jurisdictional limitations of the members. DR 2-102(D) clearly envisions and allows a situation in which a Louisiana lawyer is in partnership with other lawyers licensed in other states, but not in Louisiana. R.S. 37:213, on the other hand, makes it criminal for such a firm to practice law in Louisiana, or to engage in activities concomitant with the practice of law.
The plaintiffs are in compliance with DR 2-102(D).[9] Under the authority of this court, they are entitled to engage in the activities which the bar association claims to be in violation of the statute. Assuming that the bar association is correct in its interpretation, and that either the out-of-state lawyers or the firm itself are engaged in acts proscribed by R.S. 37:213, the statute is constitutionally infirm because it is an impermissible infringement on the judicial authority. The statute cannot frustrate this court's inherent authority to regulate the practice of law by subjecting to criminal penalties persons associated with a legal partnership which this court has authorized. Therefore, R.S. 37:213, a statute which apparently seeks to proscribe the formation of a partnership comprised of persons admitted to practice in this state and persons admitted in other states, cannot be used by the state or the bar association to interfere with the legal activities of the plaintiffs which are authorized by this court pursuant to its authority to regulate the practice of law in this state.[10]
Injunctive relief was sought by plaintiffs, but is unnecessary because of our holding regarding the conflict between R.S. 37:213 and DR 2-102(D).
Therefore, there is judgment in favor of plaintiffs declaring that, insofar as it conflicts with DR 2-102(D), R.S. 37:213 is unconstitutional, null and void, and of no effect.[11]
SUMMERS, C. J., and MARCUS, J., dissent.
NOTES
[*] Honorable Jesse N. Stone, Jr., served as Justice Ad Hoc in the vacancy created by the resignation of Tate, J.
[1] The practice of law is defined by R.S. 37:212, which is also derived from Act 163 of 1940.
[2] An issue raised by the plaintiffs is whether the statute as interpreted by the bar association violates the equal protection and privileges and immunities clauses of the federal constitution. We do not reach that issue basing our decision on other grounds. That bar regulations must not restrict federal constitutional rights was recently demonstrated when the Court of Appeals of the State of New York held that that state's requirement that a person may not be admitted to the bar unless he was an actual resident of that state for six months immediately preceding his application for admission violates the privileges and immunities clause. In the Matter of Gordon, No. 482 on the docket of the State of New York Court of Appeals, 48 N.Y.2d 266, 422 N.Y.S.2d 641 (1979).
[3] A reading of the statute indicates that the legislature sought to proscribe the formation of a partnership which would practice law (within the meaning of R.S. 37:212) through its members admitted in Louisiana if the firm contained any persons not so admitted, even if they were licensed to practice in other jurisdictions.
[4] The general authority of the court was first recognized in 1810 when the Superior Court of the Territory of Orleans disbarred an attorney for participating in the massacre of numerous persons in Santo Domingo.
[5] La.Const., art. II, §§ 1 and 2 (1921); La. Const., arts. 16 and 17 (1913); La.Const., arts. 16 and 17 (1898); La.Const., arts. 14 and 15 (1879); La.Const., arts. 3 and 4 (1864); La. Const., arts. 1 and 2 (1852); La.Const., arts. 1 and 2 (1845); La.Const., arts. 1 and 2 (1812).
[6] The legislature has recognized that the Louisiana State Bar Association is created and regulated under the power of this court. R.S. 37:211; Act 54 of 1940.
[7] The case of Meunier v. Bernich struck down a portion of Act 202 of 1932, an exact duplicate of Act 163 of 1940.
[8] The source of this provision is the Code of Professional Responsibility of the American Bar Association. The provision is a duplicate of Disciplinary Rule 2-102(D) of the code of the national organization.
[9] The plaintiffs' letterhead indicates that Stuart and Dwyer are the only attorneys connected with the firm who are admitted to practice in Louisiana.
[10] On June 22, 1979 this court had declined to abrogate DR 2-102(D) as recommended by the House of Delegates and the Board of Governors of the Louisiana State Bar Association.
[11] Consequently, Opinion No. 344 of the Committee on Professional Ethics and Grievances, approved December 1, 1975, giving effect to R.S. 37:213 instead of DR 2-102(D), is likewise null and void, and of no effect.